UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
VICKIANN NOTARO and STEPHANIE LEM,

                  Plaintiffs,

          -against-                        MEMORANDUM OF
                                          DECISION AND ORDER
FOSSIL INDUSTRIES, INC. and STEVEN      09-cv-2006 (ADS)(ARL)
BIANCO

                  Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**Law Office of Michael Joseph Corcoran**
*Attorneys for the Plaintiffs*
100 Patco Court
Suite 1
Islandia, NY 11749-1522
        By:    Michael Joseph Corcoran, Esq., of Counsel

**Raymond Anthony Giusto, Esq.**
*Attorney for the Defendant Fossil Industries, Inc.*
136 E. Main Street
East Islip, NY 11730

**NO APPERANCE**

Steven Bianco

**SPATT, District Judge.**

      The Plaintiffs in this case, Vickiann Notaro and Stephanie Lem, filed an action against Fossil Industries, Inc. and Steven Bianco, asserting that the Defendants created a hostile work environment in the Plaintiffs' workplace, which resulted in constructive discharge of the Plaintiffs. In addition, the Plaintiffs assert that the Defendants retaliated against the Plaintiffs for complaining about the

presence of the hostile work environment. The Defendant Fossil has now moved for summary judgment dismissing all of the Plaintiffs' causes of actions. For the reasons set forth below, summary judgment for the Defendant is denied with respect to the Plaintiffs' hostile work environment and constructive discharge claims, and granted with respect to the Plaintiffs' retaliation claims.

## I. BACKGROUND

The following factual allegations are taken from the Plaintiffs' complaint and the Local Civil Rule 56.1 statements filed by the parties.

On July 25, 2005 and August 5, 2005, the Plaintiffs Vickiann Notaro and Stephanie Lem were hired by Fossil Industries, Inc. ("Fossil"), respectively, as Project Managers. Fossil is a company that manufactures signs and graphics. The office has approximately twenty employees. Defendant Steven Bianco was Print Manager at the same location as the Plaintiffs. Jody Hessel worked in the same department as Bianco and was Art Department Manager. Although Notaro and Lem state that they believed Bianco to be in a supervisory role at the company, the Defendants maintain that Bianco held no supervisory authority over the Plaintiffs. Rather, Steve Melisi, the Vice President of Operations, was the immediate supervisor of Notaro, Lem, and Bianco. Howard DeCesare is the President of Fossil.

During the course of the Plaintiffs' employment, Notaro and Lem claim that Bianco continually and abusively harassed the Plaintiffs by utilizing sexually charged language. The parties agree that outbursts of profanities occurred, and that they weren't always necessarily directed at the Plaintiffs. However, the parties

disagree about the nature of these incidents. The Plaintiffs claim that on a regular basis, Bianco would throw and punch things in the office and would curse solely at Lem and Notaro. On the other hand, the Defendant characterizes the environment of one that was merely fast paced and tense, and states that Bianco's use of profanities and abusive language was due to his inability to handle pressure well and his general obnoxious personality.

Based upon the nearly identical complaint letters filed with the Equal Employment Opportunity Office ("EEOC") by the Plaintiffs in June 2006, there appears to be at least five specific instances of Bianco's alleged sexual harassment at issue. First, in response to a request to work overtime by Notaro, Bianco said "You and Howard de Cesare [the company's President] can suck my d---." Lem claims that Bianco used this phrase on more than one occasion while simultaneously putting his hands on his genitals, though the Defendant counters this assertion. Second, on April 26, 2006, Bianco walked past an office space occupied by the two Plaintiffs, punched a window and yelled, "You two can go f--- yourselves." Neither Plaintiff felt that this outburst was sexually motivated, but did find the words to be offensive and sexually charged. Third, again in April 2006, Bianco threw a metal pipe at the wall of a lunch room while it was occupied. The Plaintiffs acknowledge that it was not directed at them and neither Plaintiff was present in the room where the pipe was thrown. Fourth, on May 4, 2006, Lem witnessed an angry outburst by Bianco about an outside vendor where he used profanities related to the vendor and her sexual preferences. Lem acknowledged that Bianco's outburst was not directed at her. Fifth, on May 23, 2006, Lem spoke

with Hessel regarding some work that needed to be done and Hessel told her "No! Forget it, I'm not F---ing doing it, No, get someone else to F---ing do it, I'm putting my foot down, No!" Lem acknowledged that Hessel was not sexually propositioning her.

The Plaintiffs claim that throughout their employment at Fossil, they complained vigorously and repeatedly to the vice president, Melisi, and that Bianco's behavior was an ongoing issue. However, the two executives deny that they knew anything about the conduct, despite the Plaintiffs' contention that the facility is small and that all actions are within hearing distance. The only time that the Defendant maintains it was notified about an incident was the one that took place on April 26, 2006. In that situation, DeCesare immediately took action to address it and reprimanded Bianco for his behavior. DeCesare offered at that time to terminate Bianco, but the Plaintiffs did not encourage that he do so.

On or about April 28, 2006, Notaro claims she was constructively discharged from her employment at Fossil. Similarly, on or about May 23, 2006, Lem claims she was constructively discharged. Both Plaintiffs then submitted letters to the EEOC on June 12, 2006.

On February 18, 2009, the EEOC issued a Notice of Right to Sue to each of the Plaintiffs. Thereafter, on May 12, 2009, the Plaintiffs commenced the present action against Fossil and Bianco, claiming violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 290 *et seq.*, and New York State Human Rights Law, N.Y. Exec. Law §§ 296 *et seq.* Bianco has not yet appeared in this action.

On September 27, 2011, the Defendant Fossil filed a motion for summary judgment on the grounds that (1) Bianco's conduct did not rise to the level of an actionable claim for sexual harassment; (2) there can be no vicarious liability for Fossil because Bianco was a co-employee rather than a supervisor; (3) the Plaintiffs cannot establish a claim for constructive discharge; and (4) the Plaintiffs cannot establish a claim for retaliation as a matter of law.

## II. DISCUSSION

**A. Legal Standard on a Motion for Summary Judgment**

It is well-settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per

5

curiam), and Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2d Cir. 1989)).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). However, the nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party. Matsushita, 475 U.S. at 586. Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223–24 (2d Cir. 1994) (citations omitted).

**B. As to the Plaintiffs' Hostile Work Environment Claims**

Under Title VII of the Civil Rights Act of 1964, which prohibits sexual harassment in the workplace, a cause of action may proceed under two theories: *quid pro quo* harassment and hostile work environment. Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994); Perks v. Town of Huntington, 251 F. Supp. 2d 1143, 1154 (E.D.N.Y. 2003). The Defendant contends—and the Plaintiffs do not dispute—that no *quid pro quo* claim was made in this case. See Karibian, 14 F.3d at 777 ("[*Q*]*uid pro quo* harassment occurs when 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual' " (quoting 29 C.F.R. § 1604.11(a)(2))). Thus,

6

the only relevant inquiry is whether there is a genuine issue of material fact relating to a claim of a hostile work environment.

In order to prevail on a hostile work environment claim, a plaintiff must satisfy two elements: "'(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his or] her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir.2003) (quoting Richardson v. N.Y. State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir.1999)); accord Terry v. Ashcroft, 336 F.3d 128, 147 (2d Cir. 2003).

**1. The Presence of a Hostile Work Environment**

The Defendant maintains that summary judgment should be granted because there is no genuine issue of material fact whether a hostile work environment existed at Fossil because, as a matter of law, Bianco's behavior did not rise to the level of an actionable claim for sexual harassment.

In Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993), the Supreme Court stated that a claim for sexual harassment is established "when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. at 21 (citations and internal quotation marks omitted). The Supreme Court added that:

> mere utterance of an . . . epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII. Conduct that is not severe or

> pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

Id. at 21–22 (citations and internal quotation marks omitted).

The Second Circuit has described the criteria for adequately pleading a claim of a hostile working environment as follows:

> In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment. Isolated instances of harassment ordinarily do not rise to this level. Rather, the plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment. Determining whether workplace harassment was severe or pervasive enough to be actionable depends on the totality of the circumstances. Because the crucial inquiry focuses on the nature of the workplace environment as a whole, a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of hostility in order for those incidents to support her claim.

Cruz v. Coach Stores, 202 F.3d 560, 570 (2nd Cir. 2000).

The Defendant claims that the behavior alleged by the Plaintiffs consists solely of "angry outbursts by individuals working in a tense atmosphere" and was "wholly unrelated to each plaintiff's gender." (Def.'s Br. at 8). As this Court has found in a similar case, "the defendants' arguments have some merit and may even prevail at the trial, or perhaps, even at the end of the plaintiff's case. However, viewing the evidence in the light most favorable to the plaintiff, the claim that [the defendant] sexually harassed the plaintiff is inappropriate for resolution on a motion

for summary judgment." Ackerman v. Nat'l Fin. Sys., 81 F. Supp. 2d 434, 438 (E.D.N.Y. 2000) (Spatt J.). The Court cannot say that the application of the law to the present facts will reasonably support only one ultimate conclusion. "'An Article III judge is not a hierophant of social graces' and is generally in no better position than a jury to determine when 'conduct crosses the line between boorish and inappropriate behavior and actionable sexual harassment.'" Schiano v. Quality Payroll Sys., Inc., 445. F.3d 597, 605 (2d Cir. 2006) (quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 75 (2d Cir. 2001)).

The Plaintiffs contend that profanity was used often in the workplace, even if it was not directed at them in every instance. Although the Defendant argues that the profanity was motivated solely by Bianco's anger, it is a question of fact whether, as Lem testified in her deposition, the use of certain vulgarities in a work setting can be sexually charged so as to constitute a hostile work environment. In addition, whether the occurrences were limited to only a few occasions or happened frequently throughout the Plaintiffs' employment is an issue of credibility and one that should be left to the province of the jury.

After reviewing the record and drawing all reasonable inferences in the Plaintiffs' favor, the Court finds that sufficient evidence exists to raise an issue of material fact as to whether Bianco's behavior rose to the level of an actionable claim for sexual harassment such that a jury could find the existence of a hostile work environment. As such, summary judgment on this ground is unwarranted.

## 2. Employer Liability for the Hostile Work Environment

Another basis for the Defendant's summary judgment motion is that there can be no vicarious liability for the moving Defendant, Fossil, because Bianco was a co-employee rather than a supervisor of the Plaintiffs. At the outset, the Court notes that there is an issue of fact as to whether Bianco had supervisory authority over the Plaintiffs. Notaro testified that she subjectively understood him to be a manager because of his title and he would directly give Notaro and Lem guidance regarding client contact. However, Notaro and Lem testified that Bianco could not discipline them, and that they dictated orders to him as well.

Assuming, arguendo, that Bianco was only a co-worker of the Plaintiffs, the Court nevertheless finds that summary judgment is not warranted on the basis of Fossil's vicarious liability. "[W]hen the harassment is attributable to a coworker, rather than a supervisor. . . the employer will be held liable only for its own negligence." Distasio v. Perkin Elmer Corp., 157 F.3d 55, 63 (2d Cir.1998). Thus, Fossil may still be held liable if it "failed to provide a reasonable avenue for complaint" or that "it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." Howley v. Town of Stratford, 154 (2d Cir. 2000) (internal quotation marks omitted). "This standard requires a plaintiff to show that (1) *someone* had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable." Duch v. Jakubek, 588 F.3d 757, 763 (2d Cir. 2009) (emphasis in original).

There is no issue of fact as to whether there was a reasonable avenue of complaint. Notaro and Lem acknowledged receipt of an employee handbook, which contained a clearly articulated policy and procedure in the event an employee wished to make a complaint regarding sexual harassment. Therefore, the issue in the present case is whether Melisi and/or DeCesare knew about the harassment but failed to do anything about it.

The Defendant claims, and the Plaintiffs do not dispute, that the company executives acted immediately in response to the Plaintiffs' complaints regarding the April 26, 2006 incident whereBianco struck a window and yelled obscenities at the two Plaintiffs. However, the Plaintiffs assert that long before this particular complaint in April 2006, they had repeatedly complained to Melisi about the harassment and that he failed to do anything. Furthermore, the Plaintiffs assert that the office was so small that Melisi and DeCesare must have overhead many of the incidents of alleged harassment. The Defendant, on the other hand, maintains that the executives did not know or hear anything regarding the alleged harassment beyond the April 2006 incident.

The Court finds that a genuine issue of material fact exists. Viewed in the light most favorable to the Plaintiffs, a rationale jury could conclude that the Defendant had actual or constructive knowledge of the harassment. Therefore, summary judgment on this ground is denied.

**C. As to the Plaintiffs' Constructive Discharge Claims**

In addition, the Defendant argues that summary judgment is appropriate because the Plaintiffs cannot establish a claim for constructive discharge as a matter

of law because (1) "none of the behavior exhibited by Bianco or Hessel can be imputed to Fossil;" and (2) "the cursing and profanities . . . may have been unpleasant, but not such that a reasonable person would feel compelled to resign." (Def.'s Br. at 9).

The Supreme Court has held that a constructive discharge is "functionally the same as an actual termination" and therefore is considered an adverse employment action under Title VII. Pennsylvania State Police v. Suders, 542 U.S. 129, 148, 124 S. Ct. 2342, 159 L. Ed. 2d 204 (2004). For a court to consider constructive discharge a plaintiff must show that the employer "intentionally create[d] a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." Terry v. Ashcroft, 336 F.3d 128, 151–52 (2d Cir. 2003) (holding that allegations of constructive discharge, "viewed as a whole, [must be] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign"). "Whether working conditions are sufficiently intolerable to constitute a constructive discharge 'is assessed objectively by reference to a reasonable person in the employee's position.' " Borski v. Staten Island Rapid Transit, 413 Fed. Appx. 409, 411 (2d Cir.2011) (quoting Petrosino v. Bell Atl., 385 F.3d 210, 230 (2d Cir. 2004)).

In the present case, there are genuine issues of material fact as to whether constructive discharge took place. First, as set forth above, it is possible that the behavior by Bianco or Hessel can be reasonably imputed to Fossil. Additionally, the instances of alleged harassment cited above, which the Court found may be sufficient to constitute a hostile working environment, may also be sufficient to

12

constitute an atmosphere such that a reasonable person would feel compelled to resign. While this Court recognizes that "[t]he standard for constructive discharge is even higher than that required to prevail on a hostile environment claim," <u>Mandel v. Champion Intern. Corp.</u>, 361 F. Supp. 2d 320, 327 (S.D.N.Y. 2005), the Plaintiffs claim that the environment was so hostile as to render continued employment untenable. For example, Lem supports her constructive discharge claim with an email to DeCesare, in which she stated, "I can no longer do my job effectively due to the unprofessional and abusive working environment that is within Fossil." (Pl.'s 56.1 at ¶ 37). The Defendants assert that the Plaintiffs left for various other reasons, including Notaro's desire to be a stay-at-home mother. Overall, there is a genuine issue of material fact as to first, whether the Plaintiffs quit because of their working conditions, and second, whether the need to resign was reasonable.

The Defendant also points out that they reprimanded Bianco immediately prior to the alleged constructive discharges. However, this does not alter the Court's analysis. There is enough evidence for a reasonable juror to find that this delayed recognition of the ongoing harassment provided a remedial action that was too late and wholly inadequate, and that Defendant did not exercise reasonable care to promptly correct the harassing behavior.

Accordingly, the Defendant's motion for summary judgment on this basis is also dismissed.

**D. As to the Plaintiffs' Retaliation Claim Against the Defendant**

Title VII also includes an anti-retaliation provision, which forbids an employer from firing an employee "because [s]he has opposed any practice made

an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3(a). Further, "Title VII is violated when 'a retaliatory motive plays a part in adverse employment actions toward an employee, whether or not it was the sole cause.'" Terry v. Ashcroft, 336 F.3d 128, 140-41 (2d Cir.2003) (internal citations omitted). In order to establish a *prima facie* case of retaliatory discharge, a plaintiff must demonstrate that (1) she was engaged in protected activity; (2) the defendant was aware of that activity; (3) plaintiff suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the termination or suspension. Id.

The Second Circuit has found that retaliatory harassment can constitute an adverse employment action. See Gregory v. Daly, 243 F.3d 687, 701 (2d Cir. 2001) (citing Richardson v. New York State Dep't of Corr. Sev., 180 F.3d 426, 446 (2d Cir. 1999) (abrogated on other grounds by Burlington Northern, 548 U.S. at 68, 126 S. Ct. 2405)). "[U]nchecked retaliatory co-worker harassment, if sufficiently severe, may constitute adverse employment action so as to satisfy [that prong] of the retaliation *prima facie* case." Richardson, 180 F.3d at 446; see also McWhite v. N.Y. City Hous. Auth., No. 05 Civ. 0991, 2008 WL 1699446, at *13 (E.D.N.Y. Apr. 10, 2008) (applying Richardson to a retaliatory hostile work environment claim).

As an initial matter, the Plaintiffs engaged in protected activity by allegedly complaining about the harassment to Melisi, their supervisor, several times throughout the course of their employment. There is no dispute that informal

complaints to a supervisor constitute protected activity under Title VII. Amin v. Akzo Nobel Chemicals, Inc., 282 Fed. App'x. 958, 961 (2d Cir. 2008).

The Defendant points out that there is no adverse employment action or causal connection in the case at hand. This Court agrees. The Plaintiffs allege that the continued behavior by Bianco constituted retaliation for the complaints made by the Plaintiffs. However, there is nothing that would support a reasonable fact-finder's conclusion that Bianco's continuing harassing behavior was retaliatory harassment. First, there is no allegation or evidence that would support the idea that Bianco was aware of the complaints to Melisi or that his behavior was causally connected to those complaints. Although DeCesare did address the Plaintiffs' complaint regarding the April 26, 2006 incident with Bianco, both of the Plaintiffs left Fossil almost immediately after the incident. Thus, there was no possibility for Bianco to retaliate against them on this basis.

It appears that what the Plaintiffs are alleging in this case is a failure by the company to investigate the complaints of harassment. However, a failure to investigate complaints cannot be an adverse employment action for a retaliation claim. Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 721 (2d Cir. 2010) ("at least in a run-of-the-mine case such as this one, an employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action taken in retaliation for the filing of the same discrimination complaint."). This is the exact situation in the case at hand. The Plaintiffs' "situation in the wake of . . . having made the complaint is the same as it would

15

have been had [they] not brought the complaint or had the complaint been investigated but denied for good reason or for none at all." Id. at 721.

In sum, the Defendant's motion for summary judgment on the Plaintiffs' Title VII retaliation claims is granted.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Defendant's motion for summary judgment with regard to the Plaintiffs' Title VII claims of hostile work environment and constructive discharge is denied;

and it is further

**ORDERED** that the Defendant's motion for summary judgment with regard to the Plaintiffs' Title VII retaliation claim is granted;

and it is further

**ORDERED** that the parties are directed to appear before the Court on November 14, 2011 at 9:00 am for a pre-trial conference in Court Room 1020. Counsel shall have authority to discuss settlement at this conference.

SO ORDERED.

Dated: Central Islip, New York
October 29, 2011

                                                  _/s/ Arthur D. Spatt_
                                                    ARTHUR D. SPATT
                                          United States District Judge